IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEIDI STRAUSE, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 09-2249 |
| | : | |
| THOMAS STARNER, | : | |
| Defendant | : | |

### MEMORANDUM

**STENGEL, J.**                                                                                             August 31, 2009

The plaintiffs, Heidi Strause and Jose Casals, were stopped by the defendant, Hatfield Township Police Officer Thomas Starner, because he mistakenly believed they were in a stolen vehicle. Officer Starner drew his weapon, removed Casals from the vehicle, and placed him in the back of his police cruiser. After some period of time, Starner realized he had made a mistake and told Casals and Strause they were free to go.

Pursuant to 42 U.S.C. § 1983,[1] Strause and Casals brought this suit alleging violations of their Fourth and Fourteenth Amendment rights under the United States Constitution. Starner has moved to dismiss all claims. After considering the parties' memoranda, I will grant the motion in part and deny it in part.

---

[1] 42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

By itself, Section 1983 confers no substantive rights. It provides a remedy for redressing constitutional and federal law violations made under the color of state law. City of Okla.City v. Tuttle, 471 U.S. 808, 816 (1985); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997).

**I. Introduction**

On February 14, 2009 around 2:50 p.m., Strause and Casals were traveling in a vehicle being driven by Casals. (Compl. ¶ 6.) Officer Starner was on duty and initiated a vehicle stop of the car Casals and Strause were riding. (Id. ¶¶ 8–9.) Starner drew his weapon and removed Casals from the vehicle. (Id. ¶ 10.) After frisking Casals, Starner placed him in the back of the police cruiser. (Id. ¶¶ 11–12.) After some period of time, Starner released Casals and Strause and told them he had made a mistake. (Id. ¶ 13.) Later allegations in the complaint state Starner made a data entry error, which caused him to believe the vehicle was stolen. (Id. ¶¶ 29–30.)

The complaint consists of three counts. Count I is brought by Casals and alleges he was illegally seized. (Id. ¶¶ 15–21.) Count II is brought by Strause and alleges she was illegally arrested. (Id. ¶¶ 22–27.) Count III is brought by both plaintiffs and alleges they were subject to race discrimination. (Id. ¶¶ 28–35.)

**II. Standard of review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 US 544, 127 S.Ct. 1955, 1965 (2007). In determining whether to

grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id. See also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 127 S.Ct. at 1969. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965)).

**III. Discussion**

The complaint's recitation of the facts is sparse and provides only the slightest outline of the factual basis of the claims. After construing the complaint's allegations in

the plaintiffs' favor to the reasonable extent possible, I will deny the motion with respect to Count I (illegal seizure) and grant it with respect to Counts II (illegal arrest) and III (race discrimination).

**A. Count I - Illegal seizure**

I will deny the motion with respect to Count I. The complaint contains sufficient facts to support a claim that Starner's actions may have converted this traffic stop to a *de facto* arrest that was unsupported by probable cause.

**1. Was there a seizure?**

A traffic stop, even though limited in purpose and brief in length, is a seizure of the individual. Delaware v. Prouse, 440 U.S. 648, 653 (1979). All passengers within the stopped car are also seized. Brendlin v. California, 127 S. Ct. 2400, 2409 (2007). There is no question Casals and Strause were seized when Starner initiated the stop.

**2. Was the seizure supported by reasonable suspicion?**

Police may make an investigatory stop if "they have a reasonable, articulable suspicion that criminal activity is afoot." United States v. Benitez, 2009 WL 1353726, at *1 (3d Cir. May 15, 2009) (citing Terry v. Ohio, 391 U.S. 1, 30 (1968)). Reasonable suspicion is a belief that there is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). When considering a challenge to the existence of reasonable suspicion, the court must " look to

'the totality of the circumstances' from the viewpoint of law enforcement officers, which involves dealing not 'with hard certainties, but with probabilities.'" Id. (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981)).  "[A]n officer need not be factually accurate in her belief that a traffic law has been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact 'does not violate the Fourth Amendment.'" United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006) (quoting United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003)).

Here, the investigatory stop was the product of Starner's own mistake, which caused him to believe the vehicle Casals and Strause were in was stolen.  (Compl. ¶ 13.) The complaint neither states nor suggests Starner's decision to stop the vehicle was unreasonable in light of this information.  Furthermore, no facts are averred to support the plaintiff's contention that Starner lacked reasonable suspicion.  Simply stating there were no grounds forming a reasonable suspicion is not enough; the plaintiff must present at least some facts to support this legal conclusion.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 1951 (2009).  He has failed to do that here.

### 3. Did Starner's actions convert the detention to a *de facto* arrest?

Despite the complaint's failure to raise a question regarding the reasonableness of Starner's suspicion, there is a question whether his conduct converted this detention into an arrest.  There is no bright line rule between an investigatory detention and an arrest.

See United States v. Sharpe, 470 U.S. 675, 685 (1985) ("Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria."). Even the use of guns or handcuffs, which are so closely identified with police arrests, does not necessarily convert a detention into an arrest. Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 2005).

Rather than relying on the use of certain fixed items or the existence of specified circumstances, the court must consider "the intrusiveness of all aspects of the incident in the aggregate." Id. The Supreme Court has explained that

> [t]he scope of the intrusion will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short amount of time.

Florida v. Royer, 460 U.S. 491, 500 (1983). Where the officer has detained the individual for an unnecessarily long period of time or engaged in conduct unjustified by the circumstances, an investigative detention may convert to an arrest. United States v. McGrath, 89 F. Supp. 2d 569, 577 (E.D. Pa. 2000); Cruz ex rel. Alvarez v. City of Philadelphia, 2008 WL 4347529, at *6 (E.D. Pa. Sept. 23, 2008) ("Whether the restraint or detainment was sufficient to rise to the level of arrest will in many cases turn on the length of the detention, and the degree of restraint." (quoting Bristow v. Clevenger, 80 F.

Supp. 2d 421, 436 (M.D. Pa. 2000))).  At this point of conversion, the detention must be supported by more than reasonable suspicion: the officer must have probable cause. Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995).

Here, the plaintiffs' memorandum argues Casals was seized when Starner used his gun to pull him out of the car.  (Opp'n Mem. at 4; see also Compl. ¶ 19.)  It is also alleged Starner had no reason to believe Casals was "armed, dangerous, or carrying contraband." (Compl. ¶ 18.)  Finally, Casals was physically detained when he was placed in the back of the police cruiser.  See, e.g., United States v. Richardson, 949 F.2d 851, 856–58 (6th Cir. 1991) (finding that a *de facto* arrest had occurred where the subject was placed into a police cruiser after refusing to consent to a search).

Though the detention may have been short, proper consideration of the *manner* in which the detention occurred is a fact-dependent question that cannot be adequately addressed at this time. The complaint and the parties' memoranda have revealed no information as to why Starner believed it was necessary to use his gun or place Casals in the cruiser.  There is no allegation the vehicle had been stolen recently, the individual who stole the vehicle was armed or dangerous, or that the driver at the time (i.e. Casals) was the person who stole the vehicle.  Starner has presented no authority suggesting an officer is authorized to engage in such conduct under these limited facts, as alleged in the complaint.  As a result, it would be premature to conclude at this stage that Starner's actions did not convert this seizure into an arrest.  To make such a decision, additional

facts are necessary. Upon drawing reasonable inferences in the plaintiff's favor, I will deny the motion as to this claim.

### B. Count II - Illegal arrest

With respect to Strause's illegal arrest claim, I will grant the motion. Though Strause was also seized for Fourth Amendment purposes when Starner performed the traffic stop,[2] her claim fails because the complaint contains no facts suggesting she was arrested or that Starner's actions constituted a *de facto* arrest.

There is no allegation Starner unlawfully detained Strause for an unnecessarily long period of time. The complaint merely states she and Casals were free to go "[a]fter a period of time" during which Starner presumably checked his information and realized his error. (Compl. ¶ 13.) There is no indication Starner pointed or otherwise used his weapon in dealing with Strause. In fact, there are no facts suggesting Starner used any force against Strause. Finally, Strause was never required to move out of her car and was permitted to wait where she was until Starner completed his check.

Taken in its totality, the complaint merely states Strause was seized pursuant to an investigatory stop of an undetermined length and was not subjected to the use of physical force or of a gun. This is wholly different from Casals' situation, and these factual distinctions severely weaken her claim. For these reasons, I will grant the motion as to this claim.

---

[2] See discussion supra Part III.A.1.

### C. Count III - Race discrimination

I will grant the motion with respect to the race discrimination claim. The complaint fails to establish the legal grounds for the claim. Accordingly, I construe it as a Fourteenth Amendment equal protection claim brought under § 1983. To state an equal protection claim under these facts, the plaintiffs must demonstrate Starner's actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. See Bradley v. United States, 299 F.3d 197, 205–06 (3d Cir. 2002).

To prove discriminatory effect, the plaintiffs must establish they are "member[s] of a protected class and that [they were] treated differently from similarly situated individuals in an unprotected class." Id. at 206. The plaintiffs make no definitive description of their protected class status and only mention they were "a mixed race couple with an infant in the car." (Compl. ¶ 33.) They provide no evidence suggesting such a classification has been recognized as a protected class. Even assuming the plaintiffs can claim membership in a protected class, they have utterly failed to present any facts suggesting they were treated differently from any other similarly situated persons or that Starner was motivated by any discriminatory purpose.

### D. Qualified immunity

Starner argues for dismissal on the grounds that he is entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  It balances the interests in ensuring officials are held accountable when they act irresponsibly in their positions while shielding them "from harassment, distraction, and liability" when they act responsibly.  Id.

To determine whether this immunity applies, the Supreme Court has provided a two-step analysis in Saucier v. Katz, 533 U.S. 194 (2001).  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  If the answer is no, then the inquiry is concluded as qualified immunity will apply.  If, on the other hand, the injured part has demonstrated a violation of his or her constitutional rights, the court "must ask whether the right was clearly established."  Id.  Though the initial explanation of the test included a directive that the analytical steps be kept in the order presented above, id. (stating that the question of whether the facts alleged evidence a constitutional violation "must be the initial inquiry), courts now have discretion to choose which part to address first.

The complaint fails to provide the necessary facts from which this court can determine whether qualified immunity applies.  I first address whether Starner's actions violated a constitutional right.  It is arguable whether Starner's reliance on the computer information retrieved due to his error was reasonable under the circumstances.  Even assuming such reliance was reasonable, however, there are serious unanswered questions

of whether that reliance justified his decision to use his gun and place Casals in his cruiser, and whether those actions were of a nature and quality converting the seizure into a *de facto* arrest.  Without knowledge of what Starner knew or his subjective understanding of the facts existing at the time of the traffic stop, the court cannot definitively determine at this stage of the proceedings that his actions did not violate Casals' Fourth Amendment rights.  Consequently, I will deny the request for dismissal on the grounds of qualified immunity.

### E. Punitive damages

Punitive damages may not be awarded against officers acting in their official capacities.  Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988).  As a result, any claims for punitive damages against Starner in his official capacity will be dismissed.  To the extent punitive damages are being claimed against Starner in his personal capacity, the claims will not be dismissed.  See Walker v. North Wales Borough, 395 F. Supp. 2d 219, 229 (E.D. Pa. 2005).

## IV. Conclusion

For the foregoing reasons, I will grant the motion in part and dismiss it in part.